UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL CAIN,                                         Case No. 1:15-cv-820
            Plaintiff,                           Dlottt, J.
                                                 Bowman, M.J.
   v.

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Michael Cain filed this Social Security appeal in order to challenge the Defendant's denial of his disability claim. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two main claims of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED.

**I. Summary of Administrative Record**

On February 8, 2012, Plaintiff filed an application for Supplemental Security Income ("SSI"), alleging that he became disabled on March 1, 2009. Plaintiff alleges that he is unable to work primarily because of his heart condition, in combination with additional ailments, including left leg pain, left foot pain, diabetes, anxiety, depression, and hypertension.

After Plaintiff's application was denied initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On February 12, 2014, a hearing was held before ALJ Dwight D. Wilkerson. (Tr. 41-62). Plaintiff appeared in Cincinnati, Ohio along with counsel and an impartial vocational expert

1

("VE"). On June 6, 2014, ALJ Wilkerson issued a decision, concluding that Plaintiff was not disabled. (Tr. 21-32). The Appeals Council denied further review; therefore, the ALJ's decision remains as the final decision of the Commissioner.

Plaintiff has a high school education, with a "poor work history since 2002, well before his diagnoses of diabetes and heart problems." (Tr. 27). Plaintiff was 44 years old on the date he filed his application for benefits, and was still defined as a younger individual at the time the ALJ issued his decision. Plaintiff lives in a house with his girlfriend and her young adult son. There is no dispute that Plaintiff would not have the standing/walking ability to perform any past job at the medium exertional level, including prior work as a computer technician, janitor, or merchandise displayer, nor could he perform the job of a fast food worker.

The ALJ agreed that Plaintiff suffers from severe impairments of "heart disease, arthropathies, diabetes mellitus, hypertension, affective disorder, and anxiety disorder. (Tr. 23). However, the ALJ determined that Plaintiff did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff was entitled to a presumption of disability. (Tr. 24). Instead, the ALJ found that Plaintiff retained residual functional capacity ("RFC") to perform a range of work with the following restrictions:

> [T]he claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently. He can sit without limitation but he is able to stand and walk a total of two hours out of an eight-hour workday. He can frequently use his hands for reaching as well as for fine and gross manipulation. He should never climb ladders, ropes, or scaffolds, but he can occasionally climb ramps or stairs, stoop, crouch, crawl, and kneel. He must avoid extreme temperatures. He should also avoid concentrated exposure to humidity and hazards. He is able to understand, remember, and follow simple, concrete instructions performed immediately without the demand of fast pace or high production rates. He is able to interact on an infrequent basis with the public, co-workers, and

> supervisors on a superficial level. He is limited to a predictable environment without frequent changes in routine.

(Tr. 25). Based on the testimony of the vocational expert, the ALJ determined that Plaintiff still could perform jobs that exist in significant numbers in the national economy, including the representative unskilled sedentary occupations of assembler, inspector, and hand bander. (Tr. 32).

In his Statement of Errors, Plaintiff first argues that the ALJ erred by improperly evaluating the medical evidence - specifically, by failing to give greater weight to the opinions of a treating nurse practitioner and a treating mental health therapist, and by instead giving greater weight to the opinions of a non-treating consulting physician. In a second claim, Plaintiff contends that the ALJ erred by failing to find Plaintiff to be fully credible. Neither of the asserted errors requires reversal. While not fully articulated as a separate claim, Plaintiff also argues briefly that this case should be remanded for consideration of new and material evidence not previously presented to the ALJ, under Sentence Six of 42 U.S.C. §405(g).

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported

by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. Plaintiff's Assertions of Error**

### 1. Evaluation of the Opinion Evidence

Plaintiff claims that the ALJ committed reversible error when he discounted the opinions of two treating non-physician providers, James Ryan and Jonathon Pariseau. In contrast, Plaintiff argues that the ALJ gave too little scrutiny to the opinions of a consulting cardiologist, Dr. Krishnamurthi.

Plaintiff alleges that he is disabled primarily due to his heart condition, which he alleges causes shortness of breath and chest pain. (Tr. 51-52). Plaintiff underwent cardiac bypass surgery in 2009, and a stent placement in 2013.[1]

James Ryan is an Advanced Practice Registered Nurse ("APRN") who completed a medical assessment of Plaintiff's ability to perform work-related activities in January 2014. The ALJ accurately summarized Mr. Ryan's opinions that Plaintiff was "severely restricted in activities, unable to lift even 5 pounds, and unable to sit for even short periods due to neuropathies. He opined that the claimant would be absent more than three times a month due to his impairments or treatment." (Tr. 30, citing Tr. 1036-1040). The only "medical findings" listed by Mr. Ryan to support his opinions were "shortness of breath, fatigue, weakness and chest pain associated with walking and

---

[1]As discussed below, although not presented to the ALJ, Plaintiff relies in part on evidence relating to a second stent procedure performed in April 2014.

5

standing," though in one area he added "near syncopal episodes." (Tr. 1037-1038). Mr. Ryan opined that Plaintiff was capable of standing and walking only 30 minutes as a combined total of time throughout an eight hour day, and opined that his patient could not stand for even a fraction of an hour without interruption. (*Id.*) Similarly, he opined that Plaintiff could sit for only 30 minutes total in a workday. (*Id.*) He believed Plaintiff to be incapable of sitting due to lower extremity numbness and muscle pain that he speculated was "probably related to Diabetes Neuropathies." (Tr. 1037). Mr. Ryan apparently believed that Plaintiff was bedridden, or would be for at least 7 out of 8 hours in a day. He further opined that work activities "would put the patient at risk for Heart attack of diabetic complications." (Tr. 1039).

Mr. Pariseau was identified as a Licensed Social Worker who evaluated Plaintiff at the Shawnee Mental Health Center on May 21, 2013 for approximately 90 minutes. Mr. Pariseau diagnosed Plaintiff with mild major depression, recurrent, and generalized anxiety, with a GAF score of 50. (Tr. 29, citing Tr. 975). Other than the referenced intake evaluation, Mr. Pariseau does not appear to have offered any opinions on Plaintiff's work limitations, nor are there treatment records from Mr. Pariseau that follow his initial diagnostic evaluation.

Although the opinions of treating physicians and treating psychologists are entitled to "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in your case record," there is no dispute that neither Mr. Ryan nor Mr. Pariseau was a treating physician or psychologist whose opinions were be entitled to such a regulatory presumption. *See generally* 20 C.F.R. § 416.913(a).

In fact, the Plaintiff concedes that the ALJ correctly stated that, as a nurse, Mr. Ryan "is not recognized as an acceptable medical source," (Tr. 30). *See id.;* 20 C.F.R. §404.1527. However, Plaintiff argues that the ALJ erred by discounting Mr. Ryan's RFC opinions without fully considering relevant factors such as how long he had treated Plaintiff, how consistent his opinions were with other evidence, and how well he explained his opinions. *See Cruse v. Com'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007); *see also* SSR 06-03p. Plaintiff is highly critical of the ALJ's alleged failure to expressly cite to Social Security Ruling 06-03p, and argues that the ALJ failed to properly evaluate Mr. Ryan's opinions.

The operative regulation draws a clear "distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision." SSR 06-03p, 2006 WL 2329939 at *7. In short, there is no legal requirement for an ALJ to include a specific citation to SSR 06-03p, or to articulate his analysis in any particular way. In any event, Plaintiff is simply wrong in his assertion that the ALJ failed to cite to SSR 06-03p. The ALJ stated that he had considered <u>all</u> of the opinion evidence "in accordance with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-5p, 96-6p and **06-3p**." (Tr. 25, emphasis added).

Of course, the ultimate issue is not whether the ALJ included a rote citation, but whether he complied with the regulatory scheme. Despite the brevity of the articulation, the undersigned finds no error in the ALJ's decision to give Mr. Ryan's opinions little weight. In addition to correctly noting that Mr. Ryan was not an acceptable medical source, the ALJ expressly found his assessment to be "not consistent with" Plaintiff's clinical records and test results. (Tr. 30). Elsewhere in the opinion, the ALJ fully described those clinical records and test results, which the undersigned agrees were

7

not consistent with the disabling level of limitations expressed by Mr. Ryan. For example, the record showed that Plaintiff had only "mild" neuropathy that was incompatible with the extreme limitations on sitting suggested by Mr. Ryan. In addition, examination records dated just prior to Mr. Ryan's report, in October and December 2013 and January 2014, reflect normal breath sounds, and a regular heart rate and rhythm with no murmurs. (Tr. 27, citing Tr. 996, 999, 1003). A chest x-ray dated September 2013 showed no acute cardiopulmonary process, (Tr. 927), and the ALJ also cited to a consultative physical examination that reflected many normal findings. (Tr. 27-28, citing Tr. 511-512). The ALJ further found Mr. Ryan's opinions to be inconsistent with the opinions of Dr. Krishnamurthi, a consulting cardiologist.[2] Thus, the Court easily can follow the ALJ's reasoning, and finds the existence of substantial evidence to support his rejection of Mr. Ryan's poorly supported and extreme functional limitations.

Similarly, the undersigned finds no error in the ALJ's failure to find disability based upon Mr. Pariseau's report, though it is not clear what "opinion" Plaintiff believes was expressed in the diagnostic record. To the extent Plaintiff relies upon Mr. Pariseau's Global Assessment of Functioning ("GAF") score of 50, it is worth noting that the snapshot in time reflected by a single GAF score is not incompatible with either a general ability to work, or with the RFC determined by the ALJ in this case. The ALJ stated that Mr. Pariseau's "GAF score of 50 appeared to be low considering his opinion that the claimant's symptoms were reported as mild." (Tr. 30). In addition, considering

---

[2]Although the ALJ referred to Mr. Ryan as a "nurse practitioner," Plaintiff refers to him as a "physician assistant." (*Compare* Tr. 30, Doc. 8, PageID 1448). According to the National Council of State Boards of Nursing, the definition of an APRN includes but is not limited to nurse practitioners. See https://www.ncsbn.org/aprn.htm, accessed on November 22, 2016. The minor discrepancy regarding Mr. Ryan's precise title or qualifications is not material, since all agree that he does not fit within the definition of a treating physician.

8

that other acceptable medical sources assessed Plaintiff's level of functioning more favorably,[3] the ALJ did not err by failing to give the most credence to the lowest GAF score assessed by a non-medical source during the course of an intake interview. *See also generally Kennedy v. Astrue*, 247 Fed. Appx. 761, 766 (6th Cir. 2007) (stating that a GAF score is "not a rating of [a claimant's] ability to work").

Finally, the undersigned finds no reversible error in the ALJ's evaluation of Dr. Krishnamurthi's opinions, whose opinions as a consulting cardiologist the ALJ requested after the hearing. (Tr. 313-314, 1046-1050). Dr. Krishnamurthi reviewed the entirety of Plaintiff's medical records prior to providing opinions that included a detailed list of Plaintiff's functional limitations and restrictions. (Tr. 1050). Dr. Krishnamurthi's report highlights specific record evidence, including the exhibit number, date, and content, to support his opinions. The ALJ appropriately gave great weight to the consultant's opinions based upon his expertise as a cardiologist, his detailed review of the entire record, and expert interpretation of clinical and diagnostic evidence. (Tr. 28, 30). "We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. §416.927(c)(5).

Plaintiff's reliance on *Gayheart v. Com'r of Soc. Sec.*, 810 F.3d 365, 377 (6th Cir. 2013) is misplaced. In *Gayheart*, the Sixth Circuit reversed where an ALJ improperly applied "more rigorous scrutiny" to a treating source opinion that to the opinions of consulting physicians, which the appellate court noted was "precisely the inverse of the analysis that the regulation requires." *Id.* at 377. Plaintiff contends that the ALJ

---

[3]For example, Alan Boerger, Ph.D., evaluated Plaintiff in May 2012 and found similar diagnoses to those found by Mr. Pariseau, but assigned Plaintiff a GAF score of 58. (Tr. 24). The ALJ also relied on the August 2012 assessment of Denise Rabold, Ph.D. (Tr. 25).

similarly failed to apply rigorous scrutiny to Dr. Krishnamurthi's opinions. However, there was no treating cardiologist or other treating physician whose opinions the ALJ rejected here based solely on the consulting cardiologist's opinions. In fact, the only aspect that Plaintiff specifically finds fault with is the ALJ's failure to ask Dr. Krishnamurthi how many days that Plaintiff would be absent from work each month. No physician offered any opinion on that issue, though non-medical treating source Mr. Ryan had opined that Plaintiff would be absent more than three days per month. Plaintiff argues that the question of absences was "crucial" in light of Mr. Ryan's opinion.

Aside from the fact that the undersigned has already determined that the ALJ's rejection of Mr. Ryan's opinions was supported by substantial evidence, the undersigned finds no error in the ALJ's failure to ask Dr. Krishnamurthi a specific question about the number of absences he would expect. The ALJ asked Dr. Krishnamurthi to identify 'any functional limitations or restrictions," (Tr. 1050), which would encompass absences as well as all other restrictions. In addition, the ALJ provided Plaintiff the opportunity to request additional questions to be posed to Dr. Krishnamurthi after receiving his opinions, or to request a re-hearing. Plaintiff's response did not ask for additional questions or a supplemental hearing, but argued only that the ALJ should give greater weight to the RFC opinions of Mr. Ryan. Again, substantial evidence supports the ALJ's evaluation of the opinion evidence in this case.

### 2. Credibility Assessment

The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible for the reasons explained in this decision." (Tr. 27). Plaintiff complains this finding requires reversal, because the Sixth Circuit has held that pain alone can support a finding of disability if the pain is

caused by a medically determinable impairment. Plaintiff argues that in this case, his cardiac condition fully supports his claims of disabling levels of shortness of breath, chest pain and/or fatigue.

An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, his testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d at 387, 392 (6th Cir. 2004).

Observing Plaintiff's demeanor and evaluating his testimony in this case, the ALJ noted that Plaintiff testified his biggest problems were "shortness of breath, the little bit of chest pain he has, and his inability to sit still for a little period of time." (Tr. 26).

> In response to the [ALJ]'s question if the claimant thought he could do a sit down job, the claimant replied that sometimes he gets anxiety if somebody talks to him the wrong way, he gets shortness of breath by just moving his arms around, and he has pain in his leg all the time, which is more prevalent if standing. He declared that sitting at the hearing, his feet were numb, the bottom of his legs were tingling, and the tops of his legs hurt as well.

(*Id.*) Despite Plaintiff's reference to his anxiety, the ALJ pointed out that Plaintiff reported he had only recently gone back to counseling and does not take medication because he does not like the way it makes him feel. Plaintiff also testified that his medications "already make him feel like a zombie," but the ALJ pointed out a

11

discrepancy in that "there is no mention of side effects from medication within treatment notes."  (Tr. 26).

The ALJ also pointed out other discrepancies between Plaintiff's testimony and the medical record.  For example, the Plaintiff testified at the hearing that he could not give himself insulin and that he has to have someone give him insulin when he eats or if his sugar is high. However, Plaintiff's most recent medication list showed that Plaintiff was taking oral medication for his diabetes, not insulin.[4]  (Tr. 27).

Likewise, the ALJ found Plaintiff's allegations of <u>disabling</u> levels of shortness of breath, chest pain, and leg pain not to be "supported by clinical and diagnostic findings." (Tr. 27).  For example, despite complaints about extreme limitations in Plaintiff's abilities to walk or stand, records showed that he walked without any assistive device and has a normal gait. (Tr. 30).  With respect to his complaints of shortness of breath and chest pain, in April 2012, a consulting examiner reported Plaintiff's lungs were clear to auscultation and chest excursions were normal, with expiration that was not prolonged. A pulmonary function test in August 2013 also showed a normal study.  Plaintiff's respiratory examinations in October and December 2013 and January 2014 also showed normal breath sounds and his cardiovascular exam showed regular rate and rhythm with no murmurs.  A September 9, 2013 x-ray showed no acute cardiopulmonary process.  (Tr. 27).  And finally, the April 2012 consulting examination found "satisfactory five vessel coronary bypass surgery with chest pain he experienced since then not typical for angina pectoris, and poorly controlled hypertension."  (Tr. 28). The consultant, Dr. Danopulos, noted bilateral feet neuralgias with mild bilateral feet neuropathy pain due to uncontrolled diabetes, with "effort-related shortness of breath,

---

[4]There was some evidence that Plaintiff was briefly prescribed insulin in the past.

not documented on that exam." (*Id.*) Additional clinical records dated May and June 2012 reflected that Plaintiff complained of leg pain, but reported he was negative for chest pain, claudication, edema, and irregular heartbeat/palpitations." (Tr. 28). Last but not least, the ALJ discussed Dr. Krishnamurthi's review of Plaintiff's entire record, including multiple records that contradicted Plaintiff's allegations of a disabling level of cardiac impairment.

In addition, the ALJ reasoned that Plaintiff's work history provided reason to discount his credibility:

> The claimant has a poor work history since 2002, well before his diagnoses of diabetes and heart problems, and there is no history of psychiatric hospitalizations, such that it cannot be assumed that the claimant would necessarily work if he were able. The claimant reported that he recently tried to work a temporary laborer job that he did until the job ended but it left him short of breath and fatigued by the end of the day. Although he is not able to perform work at that level of exertion, or at the exertion level of his past jobs, the treatment record supports that his impairments would allow him to perform other work that is less strenuous.

(Tr. 27).

The ALJ also noted that, as of the date of the hearing, the Plaintiff had not returned for a follow-up visit with a cardiologist since his last procedure. (Tr. 30). The ALJ stated that Plaintiff "is generally not compliant with his diabetic diet and at times he is not compliant with his diabetic medications," which had led to complications. Despite having been diagnosed with some neuropathy, the mild nature of that diagnosis did "not support his complaints of leg pain, and he has not been prescribed Neurontin or another nerve pain medication." (Tr. 30).

In support of his argument that the ALJ's adverse credibility finding requires reversal in this case, Plaintiff argues that the ALJ was overly focused on Plaintiff's non-compliance with his diabetes regimen, because Plaintiff's poverty and living conditions

13

created barriers to his access to medical care. The ALJ at least implicitly acknowledged that fact when he stated that Plaintiff presented to the emergency room rather than seeing a primary care physician. However, the ALJ also pointed out that Plaintiff was not compliant with his diabetic diet despite having been provided with ADA diet and diabetic teaching. (Tr. 28-29). On one occasion when he sought ER care for complaints of feeling shaky and dizzy, he rated his pain as a "0 out of 10" and declined the offer of IV fluids to treat his excessively high blood sugars. (Tr. 29). Therefore, not all non-compliance could be attributed to Plaintiff's alleged poverty. In addition, to the extent that any error exists in the ALJ's failure to discuss Plaintiff's ability to afford treatment in greater detail, the alleged error is harmless based upon the ALJ's thorough analysis and multi-factorial reasons for his adverse credibility finding in this case.

### 3. Rule 6 Remand Not Required for New and Material Evidence

Although the records were not presented in a timely manner to the ALJ prior to the February 12, 2014 hearing, Plaintiff submitted additional medical evidence to the Appeals Council from a 48-hour Holter Monitor test that Plaintiff underwent two weeks after the hearing, on February 28, 2014. (Tr. 1157-1158). In addition, Plaintiff went to the ER and was admitted with chest pain approximately two months post-hearing, on April 8, 2014. Prior to his discharge on April 11, 2014, he underwent a left heart catheterization with a second stent placement at that time. (Tr, 1091-1094). The surgical report revealed an impression of "severe three vessel coronary artery disease" with significant stenosis and 100% occlusion in the mid right coronary artery. (Tr. 1092-1093).

This Court may not consider such post-hearing evidence for purposes of determining whether the ALJ's decision was supported by substantial evidence under

14

42 U.S.C. §405(g). *See Clne v. Com'r of Soc. Sec.,* 96 F.3d 146 (6th Cir. 1996); 148 *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, for purposes of a remand under sentence four, the new evidence is immaterial. Nevertheless, evidence submitted after the ALJ's decision may be considered when determining whether a remand is required under the different provision of sentence six, if the plaintiff proves that the additional evidence is both new and material, and that he had "good cause" for his failure to submit the evidence to the ALJ. 42 U.S.C. §405(g).

There is no question that the referenced evidence is "new" because it was generated post-hearing. On the other hand, Plaintiff fails to explain "good cause" for his failure to submit the evidence to the ALJ, particularly since (post-hearing) the ALJ sought the opinions of a consulting cardiologist and asked Plaintiff whether he wished to have the case re-heard. Plaintiff simply states that he "could not obtain the records until after the ALJ's decision was issued," (Doc. 8 at 19), even though he was able to submit the records to the Appeals Council.[5] The ALJ did not file his decision until June 6, 2014. Plaintiff offers no evidence that he contacted the ALJ after the February hearing and prior to the date of the June decision to alert the ALJ of any need to hold the record open to review the new Holter testing or April 2014 hospitalization records. Nor does Plaintiff offer any evidence that he took any other steps, such as seeking the new records from his providers, prior the ALJ's June decision.

Even assuming that Plaintiff could meet the "good cause" standard, however, additional evidence is "material" only if it concerns the plaintiff's condition prior to the ALJ's hearing decision – not if it shows worsening after the date of that decision. *Oliver*

---

[5] By denying Plaintiff's request for review, the Appeals Council found that the evidence was not "new and material" under its standards. (Tr. 1).

15

*v. Sec'y of HHS*, 804 F.2d 964, 966 (6th Cir. 1986). Thus, evidence of the aggravation or deterioration of a degenerative or progressive condition is not relevant if it "does not demonstrate the point in time that the disability itself began." *Sizemore v. Sec'y of HHS*, 865 F.2d 709, 712 (6th Cir. 1988). "Reviewing courts have declined to remand disability claims for reevaluation in light of medical evidence of a deteriorating condition." *Id.*; *see also King v. Sec'y of HHS*, 896 F.2d 204, 206 (6th Cir. 1990) (same); *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, for cases in which the new evidence concerns a deterioration of the plaintiff's condition following the time period in question, the appropriate remedy is to initiate a new claim for benefits alleging an onset date consistent with the aggravation or deterioration of the condition. *Sizemore*, 865 F.2d at 712.

Here, Plaintiff argues that the post-hearing records demonstrate a worsening of Plaintiff's cardiac condition <u>after the hearing</u>. Plaintiff specifically argues that because only the mid left anterior descending artery was stented in April 2014, significant remaining stenosis and occlusion must surely remain, which supports his disability claim. No opinion evidence interpreting the referenced records has been offered. The undersigned notes that the surgical report reflects that the stent procedure was successful to the extent that "[p]ost-procedure stenosis was 0%". (Tr. 1091). Even assuming that the test results and April 2014 records support worsening cardiac symptoms, however, Plaintiff's remedy is to file a new claim because the records do not alter the substantial evidence discussed herein that supports the ALJ's non-disability based upon the evidence up until the ALJ's decision.

**III. Conclusion and Recommendation**

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED.**

                                <u>/s Stephanie K. Bowman</u>
                                Stephanie K. Bowman
                                United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL CAIN,                                    Case No. 1:15-cv-820
       Plaintiff,                              Dlottt, J.
                                                Bowman, M.J.
   v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).